All right. Thank you. And get back to work. Okay. We'll call the first case of the morning. Craig v. Norton, Ed Owl, Mr. Franco. Good morning. Robert Franco on behalf of the appellants in this case. I'll represent that that includes J.B. Hunt Transport as well as David Norton. As the court knows, based upon the supplemental brief, I think we have an agreement with counsel for the dismissal of James Ross, which would preserve the jurisdiction, diversity jurisdiction. I will reserve five minutes. And that is what because of your view that Mr. Ross is dispensable? Yes, sir. I reserve five of my 15 minutes for rebuttal. With that, counsel, members of this court, the nature of a motion for summary judgment is not to try issues of fact. Nature of a motion for summary judgment is to determine if there are issues of fact. Now, in this case, what the district court did in this order is it recognized that there was a likelihood of improper tools being used on the rear structure of the trailer. There was an indication that the fourth right rear U-bolt was loose and the set screws were missing. He also indicated in his order that the maintenance had not been done on the trailer since 2003. So there was no other instrumentality that could have impacted the rear structure of the trailer. He also said that while the cause of the wheel separation wasn't clear, he said that there was no evidence presented that supports the claim that the Austin was negligent when it performed the service on the trailer in 2003. But the record in this case is well supported with indications, evidence, and inferences that there was negligence by Austin Fleet. For example, Austin Fleet admits, both in the district court and in its pleadings before this court, that it replaced the left rear hub assembly of the trailer. It admits that it worked on both sides, both the right and the left side of the trailer. It indicates that the left spindle thread of the axle was visibly damaged. And there's no doubt that there were both chisel and hammer marks on the most important piece of the structure. Now, the damage to the jim that was so severe… Mr. Frankel, let me ask you a couple preliminary questions. You're talking about the merits on the summary judgment motion. In the district court, you concurred that New Jersey law applied here. In your brief, you seem to assert an alternative ground that Pennsylvania law applies. Now, you aren't really arguing that Pennsylvania law applies here, are you? Well, sir, what I'm arguing is I'm trying to maintain consistency. There was an indication both at the district level and by… Remember, I was not defense counsel in this case. I handled the case solely on appeal. An indication that there was a Pennsylvania law angle to it. And if you think about the dismissal of the underlying tort plaintiffs, what that does is it focuses the relationship on Austin Fleet and on J.B. Hunt. And the relationship there is centered on the state of the Commonwealth of Pennsylvania. So what I'm trying to do is to make sure that I cover all bases. The reality is, if you look at this from the district court level, the district judge was faced with trying a case using one set of jury instructions, and that would be the state of New Jersey. If we're talking about the relationship as it now exists on the contribution claim, I think that there is a legitimate argument that it's focused on the Commonwealth of Pennsylvania. Is there any difference? Well, sir, there is, only for the purpose of the judgment issue in maintaining a contribution act. Recall that under the Uniform Contribution Act, there is no requirement of a judgment. That would be Pennsylvania law. Right.  There's no judgment in this case. So how do we even have any jurisdiction here if there's no judgment? Well, sir, I would respectfully disagree. I think that the term judgment is one of those things that's like describing negligence. We, as members of the bar and the court in the judicial lexicon, typically speaks of judgments of dismissal. In this case, had there been, I believe it's the AO 450 form that had been used by the district court of judgment in a civil case, I don't believe that that would have changed the equation. Talk about a form being used or not being used, a specific form, the 450, would put form over substance, which is not we as members of the bar or you as members of this court want to do. Yeah, but the plain reading of the act is it requires a judgment in order for the Uniform Contribution Act to apply. You have it best here. You have a friendly settlement, in effect, but you have an order of settling a case, but you don't have any judgment that fits into the Contribution Act. So I'm not, I have some problems with that. Sir, I would respectfully disagree. Remember that it's the burden of this court to follow what the New Jersey Supreme Court has to say, not the appellate division. It's the New Jersey Supreme Court. I was just about to ask, what from the highest court in the New Jersey Supreme Court? Sir, the last expression from the New Jersey Supreme Court on this issue was the Young case. And what the Young case did is it dealt with an issue that was very similar to what we have here. It dealt with a very good record, a comprehensive record, that involved the taking of evidence, the review of documents. And what the New Jersey Supreme Court said is we see no reason to constrict the meaning of the term, quote, money judgment in the Joint Torf Easer's Contribution Law so as to exclude consent judgments. You don't even have a consent judgment here. Well, sir, I believe that we do. If you look at what we have in this record, we have the taking of evidence. We have no objection. We have a magistrate judge that passes upon the merits of the settlement. And also remember what we have in this case is we have somebody that had a guardian ad litem appointed. Under the New Jersey court rules, I think it's 44.4, that qualifies as a consent judgment. How do you explain Polidari? I mean, I know it's the New Jersey Superior Court case as opposed to the Supreme Court, but how do you explain it? It came 18 years afterwards after Young. Well, the way that I explain it is that it's this court's burden again to follow the New Jersey Supreme Court, not a case from the appellate division. I understand that. But remember what Polidari also said is that clearly there's little philosophical difference between a settlement coupled with a stipulation of dismissal and settlement in the form of a consent judgment. So that brings us back to Judge Cowen's statement, is do we have a consent judgment in this case? And I believe that where you have the evidence that we have before the magistrate judge, we do. Remember, consent means that you have the conference of all parties, and we did. To our plaintiff, we had Austin Fleet, no objection from them. We had everybody before the magistrate judge reviewing the evidence and the judge passing upon that evidence, including the guardian ad litem. An order was entered, but the docket of the court would not reflect that a judgment was part of the proceedings. Well, sir, that gets back to my statement about the nature of a consent judgment. If we talk about using an AO 450 form, does that really change the analysis? If we get back to what Polidari said, even if you believe that that's the current state of the law, which I don't believe that it is and I don't believe it's this court's burden to follow that decision, what the Polidari court said is that if you have a consent judgment, then you've satisfied the statute. If you look at Young, then clearly we've satisfied the statute. There's nothing more the defense counsel could have done. Defense counsel did everything that could have been done to ensure compliance with the New Jersey statute. You know, if we don't dismiss the non-diverse, the diverse party, the non-diverse party, if we don't dismiss them, this case has got to be remanded to the state court, and this entire matter could be appropriately dealt with by the state court, which probably is where it belongs. Well, sir, I don't know if that's necessarily the case. I think certainly you have the power and your own inherent authority to control your own docket to make the decisions that you want. If we choose not to drop the non-diverse party, then it's got to be remanded. If this court makes that. We don't have jurisdiction. If this court makes that decision, yes. Yeah, and then this judgment or not, this could be resolved by the state court, which the Supreme Court ultimately, if they care to, could resolve it. Well, it certainly could. I mean, there are a number of ways. Certification is always another avenue. But remember, Judge, what we're dealing with when we talk about that issue of the dismissal of the non-diverse party and we talk about Newman Green is the issue of judicial economy. What we have is everybody before this court addressing the issues before this court on the nature of that judgment, and it's up to this court or the New Jersey Supreme Court ultimately to make that call. But if we're here in the interest of all the equity points that were set forth in the Green decision, it would be, I believe, and I believe counsel. The Supreme Court has said we should use that dropping sparingly is, I think, the words in the Supreme Court nomenclature. But let me get down to the merits of the case here. Basically, the judge went on, as I read what happened here in the district court, that any claim by you concerning cause of the accident is conclusory and speculative. If I sum up what his conclusion was, it's based on the fact that, and I just listed what the facts were that he went over, that this happened after the truck logged over 100,000 miles. It was over two years after it was done. Lehigh performed biannual DOT inspections on the trailer, finding no problem with the wheel bearing or the suspension. You actually performed maintenance and service in late June and early July of 2002. You replaced the left rear drum brake shoe, noted that the brake shoe was frozen to the hub, had to be beaten off and failed to take the wheel and play measurements or conduct wheel bearing inspections. Lehigh provided roadside assistance to the trailer in 05. The left wheel assembly nuts, screws, lock washers, whatever they are, bearings, were never recovered from the accident scene. You actually repaired and damaged the trailer several days after the accident. And the completion of the state police investigation report, discarding the brake shoes, wheel seals, whatever these parts are. In other words, the judge said, look, looking at this thing in its totality, your conclusion is speculative and a jury shouldn't even be bothered with hearing this type of evidence. What's wrong with that analysis? I think there's several things. First of all, spoliation was never a part of the equation. And if we look at what the evidence was, evidence presented to the court, he argued all those things. It's the same thing that Austin Fleet argues in his brief. If we're talking about the 100,000-mile issue, remember, if you look at the record, the page sites, I believe, are 44 to 46. What it does is it talks about the manufacturer's recommendations. The first service interval wasn't even for 100,000 miles. So the fact that it was a 100,000-mile service interval really is of no consequence. If we talk about all the other issues, those are certainly factual issues that could be presented. We as lawyers deal with inferences all the time. The two cases that we cited, the one with the wheel housing and the other one with the tire inflation, deal with inferences. If we have a set of rules that doesn't permit inferences to come into evidence, think about how that would impact such things as plane crashes, where the evidence is consumed in the failure. Think about a catastrophic loss involving a fire. What experts do and what we as lawyers do is we argue those inferences. What we do is we take the facts that we know, the fact that there were ears opened up in the jam nut, the fact that there was hammer and chisel marks on the jam nut, and we take those evidence and we come to reasonable conclusions, which is the same thing that experts do as part of their evidence. So I would respectfully submit that in going through that evidentiary calculus, what the judge did is he argued the evidence. He simply made the decision that he didn't think that there was sufficient evidence. But, again, if we look at the record, if we look at the briefs of Austin, if we look at all the things that you just mentioned, those are all factual issues that should have been decided by the jury. Thank you. We'll have you back. Thank you, sir. Mr. Slim. May it please the Court, John Slim, Marshall Dennehy for Appellees. In this case, we urge the Court not to rewrite New Jersey's Joint Torf Easer's Contribution Law. That law is clear in 2A53A3. Well, your friend says that you're arguing form over substance and that there was a proceeding here. His position is we don't want to be unduly technical here with something that the legislature was trying to get at. What's wrong with that thinking? What's wrong with it, Your Honor, is they want to have it both ways. What they want here is a confidential settlement without a money judgment and still seek contribution, which violates the act. So we know what happened. They wanted it confidential. They went in chambers. They told the judge what the number was. I don't know what the number was. I wasn't there. They came out, and that number was approved as fair and reasonable. We still don't know what that number is, so we know exactly what they did. They wanted it to be confidential. They did not want in the last resort a money judgment against them so the world would know what it would be. They got what they wanted, but they're going to have to live with that. So I think that answers that question. And next, if we move further to the issue of the merits of the summary judgment, Judge Pisano got it right. These wheel markings that they complain about are on the right side. There is no wheel markings on the left side, and, of course, the right side didn't fail. And next, he made the exact point that Your Honor made, Judge Cowen, which was, what about the inspections thereafter, even the year of the mishap and the summer of the mishap, which found no problems with the wheel bearings? And finally, let's look at Rule 702 and 703. This is junk science, what they're arguing here. Let's go back to the money judgment issue a second. How do you distinguish this case from Young v. Steinberg? Young v. Steinberg, the Supreme Court made it very clear, Your Honor, that if you settle on the basis of just a release and a settlement agreement, it won't comply with the Act. If you elevate it to the status of an actual money judgment and enter that money judgment, then it does comply with the Act for the purposes of contribution. Here, they missed that step, obviously intentionally, because they wanted to maintain that confidentiality. Well, in maintaining the confidentiality, and that's not unusual, it's not unusual that the Court would enter an order to maintain the confidentiality of a settlement. Isn't, as Judge Cowen indicated, isn't this putting form over substance? I don't believe so, because if that were true, Polidori would have been written differently, and Polidori cites Young v. Steinberg. So I think that answers that question. How do you distinguish? How do you explain Polidori in light of Young v. Steinberg? Well, Polidori wasn't a situation where there was confidentiality. There was simply a situation where they didn't want a judgment and didn't elevate it to the status of a money judgment. So that's just a factual difference. But the point is that the appellate division in Polidori cited Young v. Steinberg for their authority in reaching the opinion which they reached. So I think that answers that. So you think this case is closer to Polidori? I do. I do. And then finally, in terms of the junk signs and 702 and 703, let's look at the only real data in the case. The only real data in the case are the invoices and the measurements taken by our clients, the appellees. And you have them in the appendix. Well, why don't you make that your friend across the aisle says that's interesting. Maybe it's a winner. Make that argument to a jury, not to a three-judge appellate panel. Except that they didn't go beyond those invoices and those measurements to show that they weren't true. And that was their burden to come before Judge Pozzano and do that. Their position is those measurements may be true and so forth, but they still have evidence from which a jury could reasonably conclude that negligence occurred here. And furthermore, just because there's this tremendous mileage difference here that was run up and you don't get immunity with the passage of time. There's no such law after two years you're exempt from liability if you were negligent, if they prove it. Except, Your Honor, that in this case, no one could question the fact that the measurement showed that it was two one-hundredths, thousandths of an inch, which is right in the middle of the specifications of the manufacturer. So under those facts, which have not been controverted in this case, those measurements taken on the left side really do end all of the arguments which have been- Not according to their expert. Well, this expert, whoever he is, ignores the measurements. And so what he does is- Well, he said they're not relevant to his conclusion. Otherwise, he wouldn't deal with them. But he says that that's not a salient fact in determining whether or not there's been carelessness here afoot. To show you how bad the opinion was, Your Honor, he said they over-tightened. How in the world could they over-tighten if the measurement is .002, which is right in the middle of the specification of the manufacturer? So he was so dead wrong in this case. You could see how easy it was for Judge Pisano to disregard that opinion. This truly is the junk of the junk science. So I think that clearly answers those questions. And for those reasons, we would ask the Court to affirm. Thank you, Bruce. You're welcome. We'll hear rebuttal. Judge Cownie, I'd like to address a point that you made with counsel because I think it's pretty important to the merits of the case. We were talking about the issue of end play. We were talking about how much tolerance there was on this particular wheel hub. Remember that in this record, that has never been fully addressed, and there is no evidence of that. There is a deposition of Carl Kraut, who was the person that was put up to deal with that issue of end play. And what Carl Kraut said is that he's not the one that personally checked it. What we have is an invoice, but we don't have the person that did the work. Site JA-522. He doesn't know what tools the mechanic used. He doesn't know what training that mechanic received, JA-523. And he doesn't know if anyone even checked the end play. Same page at the deposition, page 68. So when we're talking about the issue of tolerances, what we have here is evidence, evidence that is clear, uncontroverted, that there was a chisel and a hammer that was used on the nut. We have absolutely no evidence of the issue of end play and the issue of how much play was in that nut itself. Now, remember, if we go back to the expert's report, one of the things that's critical and one of the things that points us in the direction of the liability finding against Austin Fleet, if this case were tried to a jury, is the manufacturer's own recommendation. Remember what the manufacturer said, that if you use a hammer and chisel on this nut, serious personal injury could occur. Well, there's a reason for that, and that's what the jury has to do in their calculus. The jury has to take into account all of those points because that's the evidence that would be heard, not by the district court in motion for summary judgment, but before a jury. Now, Judge Fischer, there is a dialogue that you had with counsel that I think also bears mention. You talked about the issue of confidentiality. Confidentiality doesn't have anything to do with the merits of this case. It's a preference of one party to keep the dollar amounts secret. Now, the burden on going forward for J.B. Hunt is to put that into evidence. There's no way that there can be a contribution finding without knowing what the measure is, and the only measure is the amount of money that was paid. So remember what confidentiality is is a statement of confidentiality as to the outside world. It's an interim issue that would be resolved when the proofs come in during the course of the jury trial. Now, we heard about the issue of junk science and the experts. Obviously, counsel doesn't like the expert reports. So you're saying that in contrast to what Mr. Slim argued, you're saying the fact that the confidentiality of the settlement was maintained in the court order doesn't defeat the analysis of this case pursuant to Young v. Steinberg. Well, precisely. Judge, one of the things that you asked counsel is how does he distinguish between Paul Dury and Young and what he said is the confidentiality. It has nothing to do with the merits of the issue. So if we're talking about Paul Dury and we're trying to reconcile that with Steinberg, again, while it's this court's burden to follow Steinberg, Paul Dury really doesn't change the analysis. The only thing that Paul Dury says that's of any difference is that there were certain issues that were not resolved by the New Jersey Supreme Court, and those issues in that court's conclusion remain. But that's not stare decisis to this court, and it's not binding in this court. What is is the Young decision. And what Young says is that we don't want to put form over substance. What we want to do is to take this on the merits, and the court gave all the equitable reasons why that made good sense. If there are no further questions, I would respectfully ask that the district court be reversed and the matter be amended. Thank you. Thank you very much, counsel. The matter is well argued. Thank you.